## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA

|  |  |  |
|---|---|---|
| IN THE MATTERS OF EAGLE MOUNTAIN VIEW, LLC, ENGLISH MOUNTAIN VIEW, LLC, AND CARVER MOUNTAIN RESERVE, LLC, | ) ) ) ) ) ) | |
| EAGLE MOUNTAIN VIEW, LLC, ENGLISH MOUNTAIN VIEW, LLC, AND CARVER MOUNTAIN RESERVE, LLC, | ) ) ) ) ) | |
| Petitioners, | ) ) | |
| Kerry Mock, | ) ) | |
| Intervenor–Petitioner, | ) ) | |
| v. | ) ) | Civil Action No. _____ |
| UNITED STATES OF AMERICA, | ) ) | |
| Respondent. | ) ) ) | |

## MEMORANDUM IN SUPPORT OF PETITION OF
## EAGLE MOUNTAIN VIEW, LLC, ENGLISH MOUNTAIN VIEW, LLC,
## AND CARVER MOUNTAIN RESERVE, LLC
## <u>TO QUASH IRS SUMMONSES</u>

The IRS summons at issue should never have been sent.  The IRS sent it directly to the attorney for the taxpayers under audit, seeking obviously privileged information.  And just yesterday, the day before the statutory deadline for this petition, the IRS essentially admitted that the documents it sought were unnecessary and irrelevant to the audit's conclusion.  Indeed, as part of its on-going war against Congress's decision to incentivize land conservation, the IRS secretly made its (erroneous and flawed) decisions regarding this audit almost a year ago.  And yet, it has continued to burden the taxpayers and other third parties with request after request and summons after summons, all while keeping the taxpayers in the dark about the true status of the audit and the specific nature of the IRS's requests.

This is the second time that a summons from this audit has been before this Court.  In the prior action, the parties engaged in extensive discussions, resolved the outstanding issued and dismissed the case.  Without notice or discussion, the IRS served this summons just as the prior case was being dismissed.  The IRS has violated the taxpayers' rights, acted in bad faith and will gain nothing from this summons.  It should be quashed.

## **Introduction**

Petitioners Eagle Mountain View, LLC ("Eagle Mountain View"), English Mountain View, LLC ("English Mountain View"), and Carver Mountain Reserve, LLC ("Carver Mountain Reserve") (collectively "the Entities") seek to quash six IRS summonses issued to Joseph ("Joe") Skalski, Esq. and his wife Kimberly Skalski CPA on or about February 25, 2021.  *See* Ex. A (Summonses).  This Court has jurisdiction because Mr. and Mrs. Skalski reside in this District and the summonses were directed to them here.  *See* 26 U.S.C. § 7609(h); *see also* Ex. A (Summonses).  As the taxpayers identified in the summonses, the Entities have standing to quash the summonses under 26 U.S.C. § 7609(b)(2).

Kerry Mock joins and adopts the Entities' petition to quash and memorandum in support thereof as an intervenor. Mr. Mock has standing to intervene under 26 U.S.C. § 7609(b)(1).  He has also filed a separate motion to intervene.

The IRS issued these summonses in connection with involving the Entities's 2016 tax returns.  That year, Eagle Mountain View and Carver Mountain Reserve claimed charitable contribution deductions for granting conservation easements to Foothills Land Conservancy ("Foothills"), and English Mountain View claimed a charitable contribution deduction for a fee simple donation of land to Foothills. Although English Mountain View made a fee simple donation rather a qualified

conservation easement, the IRS has drawn no distinction between the Entities, pursing similar investigations with the same IRS officers.  The summonses are essentially identical for each Entity and the petitioners collectively move to quash all of them.

The Skalskis provide professional services to the Entities. Mr. Skalski has provided legal services to the Entities since their creation. Indeed, Mr. Skalski represented the Entities in connection with the charitable conservation transactions under review and currently acts as the Entities' representative in their respective IRS audits. Mrs. Skalski prepared the Entities' 2016 tax return documents.

The summonses must be quashed for three reasons. First, they have nothing to do with the conclusion of the audit and were issued in bad faith pursuant to, for example, *United States v. Clarke*, 573 U.S. 248 (2014).  Although the IRS reached its (erroneous) determination *over a year ago* that the Entities are subject to penalties for alleged valuation misstatements (among other things), the IRS continues to issue summonses to third-parties with the purported goal of determining the correctness of the Entities' 2016 tax returns and charitable contribution deductions**.** March 17, 2021 Declaration of Joseph Skalaski ("Decl."), at Ex. 18, attached hereto as Ex. B. There is no good faith basis for the IRS' continued issuance of third-party summonses and invasion of the Entities' privacy. Moreover, throughout the audit,

the IRS has been evasive and unresponsive to the Entities' requests. The IRS has repeatedly ignored the Entities' questions and withheld documents that the Entities need to effectively and efficiently object to the IRS' conclusions. The IRS has consistently violated the Entities' rights under the Taxpayer Bill of Rights, including their right to challenge the IRS' position, their right to be heard, their right to quality service, and their right to be informed.

Second, with respect to Mr. Skalski, these summonses deliberately seek to invade the attorney-client privilege. The IRS explicitly asks Mr. Skalski to produce communications with his clients, including Kerry Mock (the individual authorized to act as the Entities' tax matters partners), and the manager of the Entities' tax matters partners (Green Earth Investments, LLC).

Third and finally, the summonses are overbroad and seek information that is irrelevant and that the IRS does not need to conclude its audit.

## BACKGROUND

### I.   Conservation Easements

Congress wants landowners to preserve significant undeveloped open spaces, natural habitats, and farmlands for future generations. To incentivize this preservation, Congress provided income tax benefits to landowners who restrict development on their land with a conservation easement. *See* 26 U.S.C. § 170(a),

(h). A conservation easement occurs when a land owner donates a legal easement restricting the development of property to a governmental entity or a land trust that will monitor the restrictions in perpetuity. The landowner may continue to own the land and may use it for purposes that are not prohibited by the easement.

A landowner who donates a conservation easement is eligible for a federal income tax deduction equal to the value of the donated easement if certain requirements are satisfied.  Among other things, the easement must be perpetual; the easement must be held by a qualified governmental entity or tax-exempt land trust; the easement must serve a valid conservation purpose (*i.e.*, the property must have significant ecological, scenic, historic, recreational or open space value); and the taxpayer must comply with certain reporting and substantiation requirements.  *See* 26 U.S.C. § 170(f), (h).

Valuing the donated easement, which determines the amount of the tax deduction, can be difficult because often there are no comparable easement sales. Value typically is measured by the difference between the fair market value of the property if put to its highest and best use (*e.g.* development of a residential subdivision), and the fair market value of the property after the easement takes effect.

In addition, the easement tax deduction may be available (a) to an individual landowner or, (b) if a pass-through entity owns the land, then the deduction may be

#3192853v1

- 6 -

passed through to the owners of that entity.  In December 2016, the IRS published Notice 2017-10, which requires special reporting for certain donations of conservation easements by entities that pass the deductions to the entity owners.  *See* I.R.S. Notice 2017-10, 2017-4 IRB 544.

## II.    The Entities' 2016 Conservation Easements, Donations, and Tax Returns

### A.    Eagle Mountain View

In 2016, Eagle Mountain View owned certain property in Cocke County, Tennessee.  Eagle Mountain View Inv Partners, LLC owned 97% of Eagle Mountain View and currently serves as the tax matters partner for Eagle Mountain View.  On or about September 30, 2016, Eagle Mountain View donated a qualified conservation easement to Foothills, a qualified land trust.  *See* Ex. C (Deed of Conservation Easement).  Eagle Mountain View's 2016 tax return reflects a charitable contribution deduction, which was passed through to its owners. The amount of the charitable contribution deduction was based on an appraisal of the property by W. McRae Greene of Greene Real Estate Services, an independent appraiser.

### B.    Carver Mountain Reserve

In 2016, Carver Mountain Reserve owned certain property in Cocke County, Tennessee.  Carver Mountain Reserve IP, LLC, owned 96% of Carver Mountain Reserve and still serves as the tax matters partner for Carver Mountain Reserve.  On

or about November 21, 2016, Carver Mountain Reserve donated a qualified conservation easement to Foothills.  *See* Ex. D (Deed of Conservation Easement). Carver Mountain Reserve's 2016 tax return reflects a charitable contribution deduction, which was passed through to its owners. The amount of the charitable contribution deduction was based on an appraisal of the property by the same independent appraiser, W. McRae Greene.

### C.    English Mountain View

Like the other entities, English Mountain View owned certain property in Cocke County, Tennessee.  English Mountain View IP, LLC, owned 97% of English Mountain View and currently serves as the tax matters partner for English Mountain View.  In 2016, English Mountain View made a fee simple donation to Foothills. *See* Ex. E (Deed); *see also* Ex. F (Foothills acknowledgement of donation). English Mountain View's 2016 tax return reflects a charitable contribution deduction, which was passed through to its owners. This charitable contribution deduction was similarly based on an appraisal of the property by W. McRae Greene.

### III.   The IRS' Audit of the Entities' 2016 Tax Returns and Charitable Deductions

In April 2019, amidst a national campaign by the IRS against conservation easements, the IRS initiated audits of the Entities' 2016 tax returns, including review of their 2016 charitable contribution deductions. Decl. at Ex. 1. The audits

purportedly seek to determine whether the Entities' 2016 charitable transactions satisfied the Internal Revenue Code's ("IRC") requirements and whether the valuations of the easements (and therefore the amounts of the Entities' deductions) were accurate.  Since April 2019, IRS Agent Yan Shu Zhao has led the audits and investigation. *Id.* To determine if the valuation of the Entities' easements was accurate, the IRS hired real estate appraiser Peter Dittmar to complete retrospective valuations of the easements. Decl. at Ex. 2.

Beginning in May 2019, the IRS issued numerous Information Document Requests ("IDRs") to the Entities, and the Entities have responded promptly and thoroughly, even amid a global pandemic. The Entities have received and responded to 18 IDRs *each*, demanding that they collectively respond to nearly 300 separate inquiries.  The Entities have supplied thousands of pages of documents to the IRS, including the operating agreements of each entity, the operating agreements of their majority owners and tax matters partners, relevant deeds, appraisal reports, descriptions of the business relationship between the appraiser and the Entities, the Purchase and Sale Agreements of Membership Interest between the Entities and their majority owners, explanations of why the relevant properties were donated, descriptions of how the properties will be used after the granting of easements and

how they had been previously used, and the member voting records and approval statements relating to the Entities' properties. Decl. at Exs. 3-5.

The Entities have appropriately and timely responded to the IDRs, and the IRS lauded the Entities' responsiveness. Decl. ¶ 8. The Agent did note on one occasion that certain requests "lack[ed] appropriate explanation for the stated response." *Id.* ¶ 8 and Ex. 2 at 5. However, when expressly (and repeatedly) asked to define a "lack of appropriate explanation" regarding allegedly incomplete IDR, the Agent never responded. *Id.* ¶ 8 and Exs. 6-7.

On September 4, 2019, the IRS conducted a site visit at each of the Entities' properties. Decl. ¶ 9 and Ex. 2 at 1, 3, and 5. The site team included an IRS Issue Manager, a senior IRS revenue agent, and the appraiser Mr. Dittmar.

A month later, Mr. Dittmar sent Agent Zhao retrospective appraisals of the fair market values of the Entities' properties. Decl. at Ex. 9. The IRS did not share these appraisals with the Entities for over a year. Decl. ¶ 10.

In the meantime, in February 2020, the IRS asked the Entities to provide defenses to potential penalties, without at all explaining why the IRS believed that penalties should be assessed against the Entities nor identifying the types of penalties that might be assessed. Decl. ¶ 12 and Ex. 3 at 31-34; Ex. 4 at 39-42, Ex. 5 at 27-30. When asked to explain why the IRS believes that the Entities should face penalties,

the IRS repeatedly failed to answer. *Id.* at ¶ 12. Even without an answer, the Entities voluntarily sent the IRS additional documents and letters supporting the valuations of their properties, as the Entities vehemently disagree with the IRS's position that there was anything incorrect in the 2016 tax returns. *Id.* ¶ 13, Ex. 6 and Ex. 11. The IRS never acknowledged or responded to these submissions.

After the unexplained request regarding "penalties" the Entities repeatedly requested copies of any of Mr. Dittmar's valuation work product. Decl. ¶ 10 & Ex. 8**.** On March 26, 2020, although the IRS had received Mr. Dittmar's appraisals of the Entities' properties five months earlier, the IRS stated that "neither [the IRS Agent] nor anyone on the examination team, nor Mr. Dittmar, have expressed ***any*** conclusions regarding [the] claimed charitable contribution deduction[s]." Decl. ¶ 10 & Ex. 2. (emphasis added).

On March 30, 2020, the IRS determined to assess penalties against W. McRae Greene regarding his appraisals of the Entities' properties. Decl. ¶ 14 and Ex. 12. The IRS also did not inform the Entities of this determination. Decl. ¶ 14.

On April 30, 2020 and again on May 19, 2020, the Entities asked the IRS for a third and fourth time to provide them a copy of Mr. Dittmar's valuation reports. Decl. ¶ 16, Ex. 7 and Ex. 14. The IRS stated that it did not have copies of the reports, although Agent Zhao had received copies in 2019. *See* Decl. ¶ 16.

#3192853v1

- 11 -

In August of 2020, the IRS requested a second extension of time to complete its audits. Decl. ¶ 17 and Ex. 15. And two days later, the IRS sent individual summonses to Kerry Mock. *Id.* ¶ 17 and Ex. 16 (Summonses).

After receiving the extension request and the summonses, Mr. Mock wrote to the IRS Agent asking why additional time was needed to complete the Entities' audits so that the Entities could properly respond to the request. Decl. ¶ 18 and Ex. 17.  Mr. Mock also requested several documents, including Mr. Dittmar's valuation report, and explained that the Entities had not received any information about what, if anything, was wrong with the Entities' tax returns. Again, the IRS never responded.

On August 7, 2020, unbeknown to the Entities or Mr. Mock, the IRS approved penalties against the Entities, allegedly for "gross and substantial" valuation misstatements. Decl. ¶ 19 and Ex. 18. Later that same month, Mr. Dittmar sent the IRS Agent a review of the Entities' 2016 appraisal reports.  The IRS did not provide any of this information to the Entities.

By now, the Entities had been kept in the dark for over a year.  The IRS had provided essentially no information about deficiencies in the Entities' information responses, had provided no support for any audit finding whatsoever, had repeatedly refused to respond to the Entities' requests for information, and had prevented the

#3192853v1

- 12 -

taxpayer Entities from responding to any requests *in context* by withholding information and constantly refusing to respond to the Entities' questions. Decl. ¶ 21.

Against this backdrop, in late August the entities petitioned this Court to quash the summonses to Mr. Mock. *See In re: Eagle Mountain View, et al.,* Case No. 1:20-cv-03521-MLB (filed August 25, 2020). The parties conferred through litigation counsel for several months regarding that case.

In October, the IRS produced a box of documents containing several of the documents that it had previously refused to provide, including Mr. Dittmar's 2019 retrospective appraisals of the Entities' properties that the IRS had held for more than a year (while denying their existence), and Mr. Dittmar's review of Entities own 2016 appraisals, which the IRS had held for months. *Id.* ¶ 23.

On January 19, 2021, after finally receiving information about the audit process and in an effort to resolve the litigation over the original IRS summons, Mr. Mock voluntarily agreed to sit for an interview. For over 10 hours, under oath and before a court reporter, Agent Zhao and two IRS attorneys, interviewed Mr. Mock. *Id.* ¶ 24. Mr. Mock answered every question posed, without any substantive limitation placed on him by his or the Entities' counsel. The IRS agreed to withdraw

the summons and the Entities dismissed their lawsuit.[1]  *See In re: Eagle Mountain View, et al.,* Case No. 1:20-cv-03521-MLB (Doc. 20).

As the prior case was being dismissed, the IRS served the summonses at issue. The IRS still refuses to articulate what information it lacks or needs to complete the audit.  However, on March 16, 2021, the day before this petition was due, the IRS indicated that it would conclude the audit by the end of March, apparently without regard to the contents of any documents sought in this summons. Decl. ¶ 25.

## IV.  The Third-Party Summonses to Joe and Kimberly Skalski

Joe Skalski has served as an attorney for Kerry Mock and various entities he controls since 2015. Decl. ¶ 3. Kimberly Skalski has served as the accountant and tax preparer for the entities since early 2016. *Id.*

In late February, the IRS issued three essentially identical third-party summonses to both Mr. and Mrs. Skalski.  The summonses ask for all documents and communications between December 31, 2015, and January 1, 2018, involving

---

[1] Mr. Mock testified that the Entities kept all of the relevant business records, and that the Entities had provided everything in the Entities' possession that the IRS had requested.  The only documents the IRS sought and could not obtain were Mr. Mock's personal emails prior to 2018, which he had no obligation (nor reason) to keep.  As he explained, he changed email hosts in 2018, before he had any reason to suspect an audit or any other issue.  At the IRS's request, he attempted to retrieve those prior emails from the hosting service, but the service provider had not maintained any records of them.

Mr. Skalski (or his representatives) sent to and/or from Mr. Mock, Mr. Mock's entities, or representatives of Mr. Mock or of his entities about (a) the Entities, (b) the Entities' tax matter partners; or (c) real property in Tennessee.  All of those communications are between an attorney and a client relating to the the attorney's representation.

In addition, the summonses purport to seek all communications and documents between December 31, 2015 and January 1, 2018 (a) related to the Entities' tax matters partners purchasing an interest in the Entities; (b) related to the the Entities' donations to Foothills; (c) about the Entities or the Entities' tax matters partners.  Again, with respect to Mr. Skalski, these communications all involve an attorney and a client relating to the attorney's representation.

The summonses also seek communications with the original members of the Entities, Greene Real Estate Services and related individuals, and Foothills.  Finally, the summonses seek the same document production from Mrs. Skalski and communications from any time period between Mrs. Skalski and Skalski Law Firm related to the Entities' 2016 Forms 1065 for the tax year ending December 31, 2016.

## ARGUMENT AND CITATION OF AUTHORITY

The IRS is authorized to issue summonses "[f]or the purpose of ascertaining the correctness of any return . . . [and] determining the liability of any person for any

#3192853v1

- 15 -

internal revenue tax." 26 U.S.C. § 7602(a). However, when the IRS issues an administrative summons to a third-party, a taxpayer may file a petition to quash the summons.  26 U.S.C. § 7609(b)(2). "[T]he courts—and not the IRS—are authorized to enforce this summons power." *Lari v. United States*, No. 3:18-MC-5-J-39JBT, 2019 WL 5110655, at *2 (M.D. Fla. July 16, 2019), *report and recommendation adopted*, 2019 WL 5110550 (M.D. Fla. Aug. 13, 2019).

In *United States v. Powell*, 379 U.S. 48 (1964), the Supreme Court set the standards for enforcing an administrative summons: the IRS must make a prima facie showing that (1) the investigation is being conducted pursuant to a legitimate purpose; (2) the inquiry is relevant to that purpose; (3) the information sought is not already within the IRS's possession; and (4) the IRS has followed proper administrative steps in issuing the summons.  *See Powell*, 379 U.S. at 57–58.  Even if the IRS can satisfy this burden, a petitioner may challenge the summons by disproving one of the four elements of the government's prima facie showing or "on any appropriate ground."  *Id.* at 58 (quotation omitted); *see also United States v. Clarke*, 816 F.3d 1310, 1315–16 (11th Cir. 2016).

The Court must ask whether the IRS issued a summons in good faith. *See Clarke*, 816 F.3d at 1315–16 (citation and quotation omitted); *United States v. Clower*, No. 1:16-CV-651-TCB-JKL, 2016 WL 3129451, at *2 (N.D. Ga. Mar. 22,

#3192853v1

- 16 -

2016), *report and recommendation adopted*, 2016 WL 3144048 (N.D. Ga. Apr. 29, 2016). "[A] court may not permit its process to be abused." *Powell*, 379 U.S. at 58.

Under *Clarke*, a taxpayer is entitled to examine an IRS agent about the issuance of a summons when it can "make a showing of facts that give rise to a plausible inference of improper motive." *Clarke*, 573 U.S. 248, 254 (2014). While the taxpayer "must offer some credible evidence supporting his charge… circumstantial evidence can suffice to meet that burden; after all, direct evidence of another person's bad faith, at this threshold stage, will rarely if ever be available." *Id.* at 254–55; *See also Schwartz v. United States*, No. 14-62609, 2015 WL 4104610, at *2 (S.D. Fla. May 26, 2015). Examples of an improper motive are "harassment of the taxpayer or 'any other purpose reflecting on the good faith of the particular investigation.'" *Clarke*, 816 F.3d at 1315–16 (citing *Powell*, 379 U.S. at 58).

## I. The IRS issued summonses to the Skalskis in bad faith and for an illegitimate purpose, and thus the summonses must be quashed.

"Bad faith … occurs when the [IRS] … abandon(s) in an institutional sense… the pursuit of civil tax determination or collection." *United States v. Garden State Nat'l Bank*, 607 F.2d 61, 68 (3d Cir. 1979).

Here, the IRS has done just that.  It issued these summonses after already having made a tax determination. On or before July 7, 2020, the IRS decided that penalties should be assessed against the Entities for alleged "gross and substantial"

valuation misstatements. Decl. at Ex. 18. Rather than directly inform the Entities

that penalties had been assessed against them, the IRS has continued to seek

information from third parties. IRS investigations "unquestionably involve some

invasion of privacy." *United States v. Greenberger*, No. 1:15-CV-03532-AT-JFK,

2016 WL 3912065, at *6 (N.D. Ga. Jan. 11, 2016), *report and recommendation*

*adopted,* 2016 WL 3912060 (N.D. Ga. June 21, 2016). And unnecessarily

summoning information from the taxpayers' lawyer after concluding that they must

face penalties invades the Entities' privacy for no justifiable reason.

Under federal law, "[i]t is well established that the IRS is acting in bad faith

if it pursues a summons enforcement after having already decided to make a

recommendation for prosecution to the United States Attorney's Office." *United*

*States v. Jose*, 131 F.3d 1325, 1328 (9th Cir. 1997); *see also United States v.*

*Leveto*, 540 F.3d 200, 212 (3d Cir. 2008). Although this case does not involve a

criminal prosecution (and one would be entirely baseless), the IRS operates in bad

faith when it continues to summon third parties for information under the guise of

an investigation about taxpayer liability after already having found them liable.

Moreover, bad faith may be found when the IRS issues a summons to harass

the taxpayer or for any "purpose reflecting on the good faith of the particular

investigation." *Clarke*, 816 F.3d at 1315–16 (citing *Powell*, 379 U.S. at 58). Here,

#3192853v1

the IRS' behavior has been harassing and inconsistent with the purported goals of determining the Entities' tax liability.

As discussed above, the IRS has explicitly misled the Entities regarding the status of its investigation. For example, when asked for appraisal reports on the Entities' properties, the IRS indicated that no reports had been completed. Decl. ¶ 10. This was not true. The IRS held the reports for more than a year before providing them, and then only after the Entities filed suit. *Id.* Similarly, the IRS did not share documents showing that the IRS had already determined to impose penalties. *Id.* ¶ 19. The IRS has also consistently failed to respond to questions about what additional documents or information it needs to complete the audit. *Id.* ¶ 25, Exs. 6, 7, and 14. Instead, the IRS has summonsed third parties, now including the entities' attorney, without giving any explanation as to why.  This unnecessary effort prolongs the audits and imposes significant costs on the taxpayers and third parties, and appears to be calculated to effectuate a "loud" audit and discourage others from entering conservation easements.

Regardless of the precise intent, the IRS' behavior has clearly violated the Entities' rights under the Taxpayer Bill of Rights. The Taxpayer Bill of Rights "consolidate[es] and articulat[es] in 10 easily understood expressions [the] rights enjoyed by taxpayers and found in the Internal Revenue Code and in other

#3192853v1

- 19 -

IRS guidance." *Moya v. Comm'r of Internal Revenue*, 152 T.C. 182, 197 (2019).

"While these rights have always been there for taxpayers, [the IRS chose] to highlight and showcase these rights…." IR-2014-72, 2014 WL 2590817, at *2. Specifically, the IRS violated the Entities' (1) right to challenge the IRS' position and their right to be heard, (2) right to quality service, and (3) right to be informed.

"Taxpayers have the right to raise objections and provide additional documentation in response to formal IRS actions or proposed actions, to expect that the IRS will consider their timely objections and documentation promptly and fairly, and to receive a response if the IRS does not agree with their position" (i.e., the right to challenge the IRS' position and to be heard).[2] In this case, the IRS has denied the Entities the right to challenge the IRS' position and to be heard by consistently failing to inform the Entities of important audit events. By hiding valuation reports and the fact that penalties had been, the IRS prevented the taxpayers from raising well-informed objections in context and before the IRS made up its mind.  When the Entities proactively sent documentation to defend the correctness of their tax returns, the Entities were met with silence. Further, by repeatedly failing to explain why IDRs were incomplete, the IRS prevented the

---

[2] https://www.irs.gov/newsroom/taxpayer-bill-of-rights-4.

#3192853v1

Entities from responding. In short, the IRS has prevented the Entities from objecting to the IRS' decisions by keeping documents and actions hidden.

"Taxpayers [also] have the right to receive prompt, courteous, and professional assistance in their dealings with the IRS…, to receive clear and easily understandable communications from the IRS, …"  Relatedly, they have "the right to know what they need to do to comply with the tax laws. … They have the right to be informed of IRS decisions about their tax accounts and to receive clear explanations of the outcomes." [3] The Entities have been repeatedly ignored by the IRS. They have begged for status updates and for additional information about which documents or information the IRS needs. Each time they have asked, they have been ignored. The IRS has clearly and repeatedly violated these rights, revealing bad faith in the conducting of the audit and in issuing these summonses.

In the alternative, "[e]ven if [the] taxpayer[s] cannot meet the burden of showing bad faith, [they are] entitled to an evidentiary hearing on the matter if [they] 'point[] to specific facts or circumstances plausibly raising an inference of bad faith.'" *Highland Cap. Mgmt., L.P. v. United States*, 626 F. App'x 324, 329

---

[3] https://www.irs.gov/newsroom/taxpayer-bill-of-rights-2;
https://www.irs.gov/newsroom/taxpayer-bill-of-rights-1

#3192853v1

(2d Cir. 2015). Here, the IRS' behavior certainly raises an inference of bad faith and entitles the Entities to formally examine Agent Zhao.

**II. The Summonses Seek to Invade the Entities' Attorney Client Privilege.**

The summonses affirmatively seek attorney-client privileged information, including communications between Mr. Skalski and his clients.  Mr. Skalski has represented the Entities since their creation in 2016. Prior to their creation and for the remainder of the period from which the IRS requests documents, Mr. Skalski represented Mr. Mock and various entities he controls. The taxpayer Entities assert privilege for any communications and documents since their creation, and Mr. Mock asserts privilege on behalf of himself and other entities he controls.[4]

Mr. Mock and Green Earth Investments, LLC ("GEI") provided services to the Entities in connection with their conservation easements. As manager and representative of the Entities' tax matters partners, Mr. Mock and GEI communicated with Mr. Skalski on behalf of the Entities. Mr. Skalski also provides legal services to those Entities and has been granted power of attorney to act on their behalf before the IRS. Separately, Mr. Mock and GEI communicated with Mr. Skalski on their own behalf to secure legal advice. These communications are thus privileged. *See,*

---

[4] When a government summons or subpoena seeks potentially privileged information, a third-party privilege holder may  intervene and assert privilege. *In re Grand Jury Matter*, 735 F.2d 1330, 1331 (11th Cir. 1984).

*e.g. Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 343, 348–49 (1985); *United States Commodity Future Trading Comm'n v. Capital Blu Mgmt., LLC*, No. 110CV02029WSDGGB, 2010 WL 11508355, at *3 (N.D. Ga. July 26, 2010) (corporation's management asserts corporation's privilege).

While parties asserting privilege often produce a document-by-document privilege log, such a privilege log is not required and should not be required here. *See Cavanaugh v. Sprint/United Mgmt. Co.*, No. 1:04-CV-3418-BBM, 2006 WL 8431797, at *10 (N.D. Ga. Mar. 20, 2006). "[A] party is not without recourse if it believes that completing a privilege log would be overly burdensome." *McSweeney v. Kahn*, No. 4:05-CV-0132-HLM, 2010 WL 11507210, at *2–3 (N.D. Ga. Feb. 4, 2010) (discussing burden of privilege log and noting the Court "has broad discretion to quash or alter a subpoena that is unduly burdensome"); *see Cavanaugh,* 2006 WL 8431797, at *10 (discussing ). Producing a privilege log in this case would be unduly burdensome as it would require parsing through large numbers of clearly privileged documents to address completely unidentified concerns.

In this instance, as discussed above, many of the documents sought by the Summons are direct attorney-client communications. There is no reason to log every communication between a lawyer and his client regarding the express subject matter of the representation.

#3192853v1

- 23 -

## III.     Much of The Information Sought Is Not Relevant

The IRS must of establish that the information sought by the summons "might throw light upon the correctness of the taxpayer's return." *La Mura v. United States*, 765 F.2d 974, 981 (11th Cir. 1985) (quotation omitted).  It is not sufficient for the IRS to have "an idle hope that something might be discovered"; rather, the IRS must demonstrate that it has a "realistic expectation." *Id.* (quotation omitted).

First, as discussed above, the IRS has already made its determination regarding "the correctness of the taxpayer's return."  Decl. at Ex. 18.   That determination is incorrect and based on flawed information.  But the IRS made it almost a year ago, and has determined that it will conclude the audit by the end of this month regardless.  Decl. ¶ 26.  Nothing in this summons could be considered relevant or necessary in that context.

Further, the requests in the summonses issued to the Skalski seek extensive information relating to years that are not under audit.  *See supra* at 15-16 These provide have no probative value relating to the purpose of the relevant donations or the relevant appraisal values in 2016.  *See United States v. Goldman*, 637 F.2d 664, 667 (1980) (refusing to enforce summons for records prior to tax years under audit because "relevance is not so clear when records for other years are sought"); *United States v. Taylor*, 115 A.F.T.R.2d 2015-1165 (C.D. Cal. 2015) (denying petition to

enforce IRS summons and giving government time to establish potential relevance when summons sought "information from years outside the tax year under investigation"); *Methvin v. United States*, CV-98-1513-ST, 1999 U.S. Dist. LEXIS 10235, at *11-12 (D. Or. May 7, 1999) (quashing the summons for records from time periods outside years under audit and stating that the IRS "has made no effort to explain why records for years other than 1995 and 1996 are relevant to the IRS' investigation for tax years 1995 and 1996").

Here, the IRS cannot meet its relevance burden because information from other years will shed no light on whether the 2016 donations complied with the IRC's requirements, or the amount of the 2016 charitable deductions.

## CONCLUSION

For the reasons set forth above, the Court should quash the six IRS summonses issued to Mr. and Mrs. Skalski.  In the alternative, should the Court require additional information, the taxpayers should be permitted to examine Agent Zhao regarding the purpose of continuing the audit process long after having made a determination regarding its outcome.

Respectfully submitted, this 17th day of March, 2021.

/s/ *Jason J. Carter*
Jason J. Carter
Georgia Bar No. 141669
carter@bmelaw.com

#3192853v1

- 25 -

Amanda D. Bradley
Georgia Bar No. 560602
bradley@bmelaw.com
**Bondurant, Mixson & Elmore, LLP**
1201 W. Peachtree St, N.W. Suite 3900
Atlanta, Georgia 30309
(404) 881-4100 – Phone
(404) 881-4111 - Fax

#3192853v1

## **CERTIFICATE OF COMPLIANCE**

## **WITH LOCAL RULE 5.1**

Counsel for Petitioners Eagle Mountain View, LLC, English Mountain View, LLC, and Carver Mountain Reserve, LLC certifies that the foregoing document was prepared in Times New Roman, 14-point font, in accordance with Local Rule 5.1.

This 17th day of March, 2021.

*/s/ Jason J. Carter*
Jason J. Carter
Georgia Bar No. 141669

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that this 17th day of March, 2021, a copy of the foregoing

**MEMORANDUM IN SUPPORT OF PETITION OF EAGLE MOUNTAIN**

**VIEW, LLC, ENGLISH MOUNTAIN VIEW, LLC, AND CARVER**

**MOUNTAIN RESERVE, LLC TO QUASH IRS SUMMONSES** was filed with

the Clerk of Court using the CM/ECF system, and deposited in the United States

Mail, Certified, return receipt requested, with postage prepaid to the following:


**Yan Shu Zhao, Internal Revenue Agent:**
Internal Revenue Service
2888 Woodcock Blvd,
Atlanta, GA 30341

**Andrew S. Breig, Internal Revenue Agent Manager**:
Internal Revenue Service
2888 Woodcock Blvd,
Atlanta, GA 30341

**Joseph and Kimberly Skalski**
4601 Chardonnay Ct,
Dunwoody, GA 30338

**Kerry Mock**
11175 Cicero Drive
Suite 100
Alpharetta, GA 30022

#3192853v1

**Merrick B. Garland, Attorney General, U.S. Dept. of Justice**
U.S. Department of Justice
950 Pennsylvania Avenue, NW
Washington, DC 20530-0001

**Kurt R. Erskine, Acting United States Attorney**
**For the Northern District of Georgia**
Richard B. Russell Federal Building
75 Ted Turner Dr. SW
Suite 600
Atlanta, GA 30303-3309

     This 17th day of March, 2021.


           /s/ *Jason J. Carter*
           Jason J. Carter
           Georgia Bar No. 141669